# UNITED STATES DISTRICT COURT

FILED
2025 AUG 18 PM 4:28
CLERK
U.S. DISTRICT COURT

## FOR THE DISTRICT OF UTAH

**ANTONIA BLACKWELL,**
No fixed address due to housing persecution
Phone: 385-334-6113
Email: kranberry99@yahoo.com
*Plaintiff,*

Case: 2:25-cv-00689
Assigned To : Pead, Dustin B.
Assign. Date : 08/18/2025
Description: Blackwell v. Early
Light Academy et al

v.

**EARLY LIGHT ACADEMY; STEPHANIE SCHMIDT,** in her individual and official capacity; **AMY BIRD,** in her individual capacity; **ERIN PRESTON,** in her individual capacity; **ANNE TROUT,** in her individual capacity; **MARISOL PIZARRO,** in her individual capacity; **SARAH HYATT,** in her individual capacity; **JORDAN TEUSCHER,** in his individual and official capacity; **KIRK CULLIMORE JR.,** in his individual and official capacity; **JUDGE MICHAEL BOEHM,** in his individual capacity; **CITY OF SOUTH JORDAN; DEB SNOW,** in her individual capacity; **CARA TANGARO,** in her individual capacity; **NICOLE FAAS,** in her individual capacity; **COURT CLERK [NAME TBD],** in individual capacity; **WARRANT PROCESSING STAFF [NAMES TBD],** in their individual capacity; **POLICE OFFICERS [NAMES TBD],** in their individual capacity; and **DOES 1-10,**

*Defendants.*

Case No. _____

# COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF UNDER CIVIL RICO (18 U.S.C. § 1964), CIVIL RIGHTS (42 U.S.C. §§ 1983, 1985), AND RELATED CLAIMS

---

# I. INTRODUCTION

1. This case exposes a systematic criminal conspiracy by powerful Utah officials who coordinated across multiple government institutions to persecute a Black mother for advocating for her son with a disability federally protected educational rights. This persecution threatens every parent in America who dares advocate for their child's education. This conspiracy threatens every parent in America advocating for disabled children's education, revealing systematic targeting that extends beyond individual persecution to institutional discrimination requiring comprehensive federal intervention and potential class-wide relief.

2. Plaintiff Antonia Blackwell is completely innocent of any wrongdoing. When she exercised her constitutional rights to seek special education services for her son with a disability under the Individuals with Disabilities Education Act (IDEA), defendants responded with coordinated retaliation across legislative, judicial, executive, and educational institutions. Every allegation against Plaintiff has been

proven false through defendants' own admissions, video evidence, and the undeniable fact that her son thrived at another school in the same community.

3. The conspiracy involved: (a) criminalizing federally protected parental advocacy; (b) sabotaging Plaintiff's legal representation through conflicted attorneys using personal Gmail to avoid firm oversight; (c) retaliating legislatively after Plaintiff sought help; (d) violating federal laws protecting children with disabilities; and (e) systematic discrimination in the application of laws and government services based on race and disability status.

4. This is NOT a duplicative habeas action. While procedural warrant issues are pending appellate review in the Tenth Circuit (Case No. 25-4081), this complaint presents NEW CLAIMS under RICO and civil rights laws based on evidence discovered AFTER the habeas dismissal, including proof that Plaintiff's own attorney was part of the conspiracy. The Tenth Circuit is reviewing only the procedural validity of the warrant; this Court must address the criminal enterprise that created it.

5. The Conspiracy in One Paragraph: Representative Teuscher ignored Plaintiff's plea for housing help in February 2023, then ignored her again in January 2024 when she begged for help facing 2.5 years in jail, then co-sponsored HB464 to criminalize parents like her. Detective Palmer initially took Plaintiff's complaint against Early Light Academy, connected her with DCFS, and wrote "Thank you for always being so thorough and easy to work with," leading Plaintiff to believe the South Jordan Police Department supported her. The school expelled her son on November 29, 2023, achieving their goal and eliminating any alleged "threat." Yet 20 days later on December 19, 2023, the school escalated complaints to Palmer's supervisors—proving their true malicious intent to destroy the mother even after victory. The same South Jordan Police Department then reversed course and prosecuted Plaintiff based on identical allegations Palmer had initially investigated and found unworthy of action. Palmer tried to help, but the conspiracy went over his head—which is why he is not named as a defendant. Plaintiff's own attorney used Gmail to sabotage her defense while working for a firm collaborating with her persecutors. South Jordan Justice Court stopped accepting her filings after a Rule 33 order. The judge denied ADA accommodation he'd granted multiple times, immediately after Plaintiff moved to disqualify him. And the arrest warrant sets bail at $10,000 when Utah's statutory maximum is $680—a mathematical impossibility no amount of judicial discretion can justify. This isn't speculation—it's documented conspiracy to destroy a Black mother who dared advocate for her child with a disability's rights. Every element is documented in public records, court transcripts, and defendants' own admissions.

## II. EMERGENCY ASSET PRESERVATION RELIEF REQUESTED

PLAINTIFF REQUIRES IMMEDIATE ASSET PRESERVATION: Upon service of this RICO complaint seeking treble damages and forfeiture, defendants will likely attempt to transfer, hide, or dissipate assets to avoid judgment. Defendants have already demonstrated consciousness of guilt through coordinated evidence suppression, Gmail concealment, and systematic obstruction of justice. Plaintiff respectfully requests this Court's immediate attention to the Emergency Motion for Asset Freeze filed contemporaneously with this Complaint.

## III. RELATED PROCEEDINGS

6. Warrant Relief Pending in Tenth Circuit: Emergency relief from the illegal arrest warrant is currently pending before the Tenth Circuit Court of Appeals in Case No. 25-4081. This RICO action presents entirely separate claims for damages and dismantling of the criminal enterprise that created the warrant, regardless of the Tenth Circuit's resolution of warrant-specific issues.

## IV. FEDERAL CRIMINAL REFERRAL REQUEST

7. FEDERAL CRIMINAL REFERRAL REQUEST: Plaintiff respectfully requests this Court refer the documented evidence of federal crimes to the Federal Bureau of Investigation and United States Attorney for criminal prosecution under: a. 18 U.S.C. § 241 (Conspiracy Against Rights): Multi-institutional coordination to deny Plaintiff's constitutional rights to advocate for her child with a disability; b. 18 U.S.C. § 242 (Deprivation of Rights Under Color of Law): State officials using their positions to criminalize federally protected advocacy; c. 18 U.S.C. § 1503 (Obstruction of Justice): Judge Boehm issuing warrant with disqualified, systematic evidence suppression, blocking legal motions; d. 18 U.S.C. § 1512 (Witness Tampering): Coordinated false reports, perjured testimony, and attorney sabotage to obstruct federal proceedings; e. 18 U.S.C. § 1343 (Wire Fraud): Faas's documented false representations via interstate electronic communications; f. 18 U.S.C. § 1519 (Obstruction of Federal Proceedings): Systematic suppression of exculpatory evidence in federal habeas proceedings.

# V. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), and 18 U.S.C. § 1964(c) (civil RICO).

9. Venue is proper under 28 U.S.C. § 1391(b)(1) because all defendants are residents of the State of Utah in which this district is located, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district, specifically in South Jordan, Utah.

10. Additionally, for claims against state officials acting under color of legal authority, venue is independently proper as the events giving rise to the claims occurred in this district and Plaintiff was forced to leave this district as a direct result of defendants' persecution.

10a. Federal Funding Nexus: Early Light Academy receives substantial federal funding under IDEA (Individuals with Disabilities Education Act), Title I, and other federal education programs. The conspiracy to criminalize federally protected IDEA advocacy while simultaneously receiving federal education funding creates direct federal jurisdiction and makes venue proper in federal court as the forum specifically designed to enforce federal education rights.

11. This case is related to Blackwell v. Boehm, Case No. 2:25-cv-00465-TS, currently on appeal to the Tenth Circuit, Case No. 25-4081. All exhibits and transcripts referenced herein are on file in that case and are incorporated by reference.

12. Relationship to Tenth Circuit Proceedings: While narrow warrant-related issues are pending before the Tenth Circuit in Case No. 25-4081, this RICO action presents entirely new claims based on newly discovered evidence of conspiracy not available during habeas proceedings. The Tenth Circuit is reviewing only the procedural validity of the warrant and narrow habeas issues; this Court must address the criminal enterprise that created it, award damages for the conspiracy, and order systemic reforms that go far beyond the scope of habeas relief. These facts are also presented in Plaintiff's Emergency Motion for Stay pending before the Tenth Circuit, Case No. 25-4081, filed August 18, 2025.

# VI. RELATIONSHIP TO OTHER PROCEEDINGS AND DISTINCTION OF CLAIMS

13. Distinct Legal Claims: This action is fundamentally different from the pending Tenth Circuit appeal (No. 25-4081): a. Tenth Circuit Habeas Appeal: Reviews narrow procedural issues regarding warrant validity, judicial disqualification, and bail amount under habeas jurisdiction; b. This RICO Action: Presents comprehensive civil claims under 18 U.S.C. § 1964 (RICO), 42 U.S.C. §§ 1983, 1985 (civil rights), and federal disability laws based on newly discovered evidence of criminal conspiracy.

14. Different Evidence Base: a. Habeas Proceeding: Limited to warrant's facial validity and procedural violations known at time of filing (June 2025); b. This Action: Based on evidence discovered in August

2025, including Deseret News investigation revealing Tangaro-Cullimore collaboration, Nicole Faas Gmail communications proving attorney sabotage, and pattern evidence of multi-court coordination.

15. Different Relief Sought: a. Tenth Circuit: Stay of warrant pending appeal and potential remand for habeas relief; b. This Court: Treble damages under RICO, compensatory and punitive damages for civil rights violations, permanent injunctive relief, systemic reforms, federal oversight, and dismantling of criminal enterprise.

16. No Forum Shopping: Plaintiff brings these claims to this Court because: a. Only a district court can adjudicate RICO claims and award damages; b. The conspiracy evidence emerged after habeas dismissal; c. The Tenth Circuit lacks jurisdiction over new RICO and expanded civil rights claims; d. Even if the warrant is stayed on appeal, the criminal enterprise must still be dismantled and victims compensated.

17. Judicial Economy: This Court's consideration of these broader claims serves judicial economy by addressing the root cause (criminal enterprise) rather than just symptoms (individual warrant), potentially mooting future litigation and preventing ongoing constitutional violations.

## VI.A. The Rooker-Feldman Doctrine Does Not Bar This RICO Action

18. This Court has jurisdiction because Plaintiff seeks damages for a criminal RICO conspiracy, not review of state court decisions—indeed, there are no decisions to review as Plaintiff was never tried, never convicted, and never afforded a bail hearing. The Rooker-Feldman doctrine bars federal district courts from reviewing state court judicial decisions. District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983) ("Review of such determinations can be obtained only in this Court."). However, as narrowed by Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005), the doctrine applies only to "state-court losers complaining of injuries caused by state-court judgments." Plaintiff is not a state-court loser—she never had her day in court. The warrant was issued ex parte by Judge Boehm on May 15, 2025, while he was disqualified, without any trial, conviction, or hearing. This action targets the criminal enterprise that prevented fair proceedings through wire fraud, legislative retaliation, and attorney sabotage occurring entirely outside any courtroom.

19. The Feldman Framework Distinguishes This Case: In Feldman, the Supreme Court distinguished between challenges to "state-court decisions in particular cases" (no federal jurisdiction) and "general challenges to state bar rules" or conduct outside judicial proceedings (federal jurisdiction exists). Id. at 485-486. Here, Plaintiff presents a third category: challenging a criminal conspiracy that prevented any fair judicial proceeding from occurring. Plaintiff never had a trial, was never convicted, and never received a bail hearing—the warrant was issued by a disqualified judge in violation of Utah law. The predicate acts—Nicole Faas's wire fraud via Gmail, Senator Cullimore Jr.'s legislative retaliation through HB464, Detective Palmer's institutional betrayal, Preston's orchestration with prosecutors—are crimes independent of any judicial proceeding. Federal courts retain jurisdiction over criminal conspiracies that corrupt or prevent fair state proceedings, especially when no adjudication of guilt ever occurred.

20. The Source of Injury Test Confirms Jurisdiction: Critically, Plaintiff is not a "state-court loser" seeking federal review—she has never had a trial, never been convicted, and never even had a bail hearing. The warrant was issued by Judge Boehm on May 15, 2025, while a disqualification motion was pending, without any adjudication of guilt or procedural due process. The Supreme Court in Exxon Mobil explicitly narrowed Rooker-Feldman, criticizing lower courts that "construed [the doctrine] to extend far beyond the contours of the Rooker and Feldman cases." 544 U.S. at 283. Unlike the "state-court losers" in Rooker and Feldman who complained of injuries caused by state-court judgments, id. at 284, Plaintiff's injuries stem from a criminal conspiracy that prevented her from ever receiving a fair trial. This action presents "independent claim[s]" under Exxon Mobil—RICO violations, wire fraud, and civil rights conspiracies that exist regardless of any state proceedings. Id. at 293. The warrant issued without trial or hearing is evidence of conspiracy, not a judgment subject to review. As Exxon Mobil clarified, Rooker-Feldman "does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings." Id. at 284. The RICO

conspiracy—involving attorney sabotage (Faas's Gmail fraud), legislative retaliation (HB464), and police betrayal (Palmer reversal)—constitutes the type of independent federal claim that survives Rooker-Feldman scrutiny.

21. The Relief Sought Cannot Be Obtained Through Appellate Review: There is no state court judgment to appeal—Plaintiff was never tried, never convicted, and never afforded a bail hearing. The warrant was issued ex parte by a disqualified judge violating Utah law. RICO treble damages, criminal prosecutions under 18 U.S.C. §§ 241-242, asset forfeiture, and enterprise dismantling are not remedies for appealing non-existent judgments. Even if there were a judgment to appeal, these remedies exceed anything available through 28 U.S.C. § 1257 Supreme Court review. This Court isn't being asked to reverse state court decisions that never occurred, but to punish the criminals who prevented fair proceedings from ever taking place. The Tenth Circuit can stay the warrant, but only this Court can dismantle the criminal enterprise, award damages, and order systemic reforms. The conspiracy's criminal acts—occurring in law offices (Faas's Gmail fraud), legislative chambers (HB464 retaliation), and police departments (orchestrated reversal)—require federal intervention through RICO, not appellate review of proceedings that never happened.

# VII. LEGAL FRAMEWORK - EVIDENTIARY STANDARDS

22. No Direct Evidence Required: Under Desert Palace, Inc. v. Costa, 539 U.S. 90, 99-100 (2003), the Supreme Court definitively held that "circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence" in proving discriminatory intent, conspiracy, and coordinated conduct.

23. Equal Weight of Evidence: The Desert Palace Court emphasized that "the law makes no distinction between the weight or value to be given to either direct or circumstantial evidence," and that pattern evidence demonstrating coordination and discriminatory motive satisfies the preponderance of evidence standard. Id. at 100.

24. Application to Conspiracy Cases: Courts applying Desert Palace recognize that conspiracies are rarely proven through direct admissions but rather through circumstantial evidence showing: (a) coordinated timing of actions; (b) implausible innocent explanations; (c) consciousness of guilt through concealment; and (d) patterns of conduct serving a common illegal purpose. Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 508 n.17 (1957) ("Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence"); Desert Palace, 539 U.S. at 99-100.

25. Burden of Proof: Plaintiff need only prove conspiracy and discrimination by a preponderance of the evidence using circumstantial evidence of patterns, timing, and the absence of innocent explanations. Desert Palace, 539 U.S. at 101.

# VIII. SEDIMA v. IMREX - RICO FRAMEWORK

26. Liberal Construction Mandate: Under Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 497-498 (1985), RICO must "be liberally construed to effectuate its remedial purposes," and the Court emphasized that "RICO was an aggressive initiative to supplement old remedies and develop new methods for fighting crime."

27. No Prior Criminal Conviction Required: The Supreme Court in Sedima definitively held that civil RICO plaintiffs need not prove defendants were previously criminally convicted. Id. at 493. "The requirement of prior convictions would be inconsistent with Congress's underlying policy concerns." Id.

28. "Legitimate" Defendants Not Exempt: Sedima specifically rejected attempts to limit RICO to organized crime, holding that "Congress wanted to reach both 'legitimate' and 'illegitimate' enterprises" because legitimate businesses and government entities "enjoy neither an inherent incapacity for criminal activity nor immunity from its consequences." Id. at 499. This principle directly applies to defendants here—no matter how "legitimate" their official positions, they face full RICO liability when operating criminal

enterprises. Government officials, legislators, judges, prosecutors, and school administrators are precisely the type of "legitimate" defendants Sedima held accountable under RICO.

29. Private Attorney General Function: Sedima recognized that civil RICO serves to "fill prosecutorial gaps" and functions as a "private attorney general" provision when state remedies fail. Id. at 493. This is precisely Plaintiff's situation where state prosecutors and courts systematically blocked justice, making federal RICO enforcement essential. As Sedima emphasized, RICO's private enforcement mechanism is designed for cases where official channels have been corrupted or compromised.

30. Liberal Construction Mandate for Government Defendants: Under Sedima's mandate that RICO "be liberally construed to effectuate its remedial purposes," courts must apply RICO expansively even against government defendants who claim official immunity or legitimacy. 473 U.S. at 497-498. Sedima's "aggressive initiative to supplement old remedies and develop new methods for fighting crime" specifically encompasses situations where government officials themselves become the criminal enterprise requiring federal intervention.

31. Pattern = Continuity Plus Relationship: Sedima clarified that a pattern of racketeering requires "continuity plus relationship" between predicate acts. Id. at 496 n.14. Plaintiff's case demonstrates both: continuous persecution from February 2023 through August 2025, with all acts related to silencing disability advocacy.

32. Business or Property Injury Compensable: Under Sedima, injury to "business or property" includes economic harm like housing loss, employment barriers, and quantifiable damages from defendants' racketeering. Id. at 495. Plaintiff's inability to secure housing due to the warrant constitutes such injury.

# IX. IMMUNITY-PIERCING LEGAL FRAMEWORK

33. Civil Rights Conspiracy Pierces All Immunity: Under 18 U.S.C. § 241 and 42 U.S.C. § 1985, conspiracy to deny civil rights under color of law pierces legislative, prosecutorial, and judicial immunity when defendants act outside their official roles in coordinated criminal enterprises. United States v. Brewster, 408 U.S. 501 (1972); Dennis v. Sparks, 449 U.S. 24 (1980). As Sedima confirms, no defendants are exempt from RICO liability based on their "legitimate" status. 473 U.S. at 499.

34. Dennis v. Sparks Immunity-Piercing Authority: Under Dennis v. Sparks, 449 U.S. 24, 28-29 (1980): a. "Immunity does not change the character of the judge's action or that of his co-conspirators"; b. "Private parties who corruptly conspire with a judge...are acting under color of state law within the meaning of § 1983"; c. Administrative staff have no immunity for conspiring with judges or refusing to file required documents; d. Police executing invalid warrants issued through judicial conspiracy lose qualified immunity protection.

34a. Conspiracy Exception to All Immunity: Under the well-established conspiracy exception to immunity, no defendant enjoys protection when acting in concert with others to violate federal rights. The coordinated nature of defendants' conduct—spanning legislative, judicial, prosecutorial, and educational institutions—places all defendants outside their official roles and within the conspiracy exception. Dennis v. Sparks, 449 U.S. at 28-29; Brewster, 408 U.S. at 526.

35. Griffin v. Breckenridge Private Conspiracy Authority: Under Griffin v. Breckenridge, 403 U.S. 88, 102 (1971), § 1985(3) covers private conspiracies with "racial, or perhaps otherwise class-based, invidiously discriminatory animus" - directly applicable to discrimination against Black parents advocating for disabled children's rights.

36. Legislative Immunity Limitations: Under Brewster, legislative immunity does not protect legislators when they engage in non-legislative conduct such as coordination with private parties to retaliate against constituents or conspiracy to deny constitutional rights. 408 U.S. at 526.

37. Prosecutorial Immunity Limitations: Prosecutorial immunity does not extend to conspiracy with private parties or coordination outside prosecutorial functions. Kalina v. Fletcher, 522 U.S. 118 (1997); Burns v. Reed, 500 U.S. 478 (1991).

38. Judicial Immunity Limitations: Judicial immunity does not protect judges acting without jurisdiction or in conspiracy with other parties. Pulliam v. Allen, 466 U.S. 522 (1984); Stump v. Sparkman, 435 U.S. 349 (1978).

# X. PARTIES

## Plaintiff

39. Antonia Blackwell is a Black mother with two Master's degrees advocating for her son with a disability educational rights under federal law, who has been unhoused and living in temporary housing since September 2024. While the initial housing loss stemmed primarily from a separate housing discrimination case, the outstanding warrant created by defendants' conspiracy now appears on all background checks required by landlords, serving as an absolute barrier preventing her from securing stable housing and prevents her from finding stable employment forcing her to start her own business. Plaintiff previously filed complaints with the U.S. Department of Education alleging race discrimination and retaliation by Early Light Academy regarding her son's education. Those complaints have now stalled due to the disbandment of that agency.

## Defendants

### Educational Institution and Officials

40. Early Light Academy is a charter school entity that receives federal funding under IDEA and other federal programs, violated federal disability laws, and coordinated with law enforcement to criminalize Plaintiff's advocacy through regular consultation protocols with South Jordan prosecutors and police.

41. Stephanie Schmidt, in her individual and official capacity as Executive Director of Early Light Academy, who: a. Implemented policies resulting in systematic denial of federally mandated special education services; b. Predetermined the expulsion of Plaintiff's son with disabilities without required IDEA procedural safeguards; c. Upon information and belief, coordinated with other defendants through South Jordan community channels and, upon discovery, will be shown to have participated in regular coordination meetings; d. Supervised and ratified the actions of school officials who filed false reports and provided perjured testimony.

42. Amy Bird, in her individual capacity as Principal of Early Light Academy, who illegally recorded Plaintiff's son with disabilities without parental consent and participated in coordinated false reporting with other school officials.

43. Erin Preston, in her individual capacity as school attorney, who orchestrated the criminal prosecution through direct coordination with South Jordan prosecutors, admitting this was the first parent prosecution in her 15+ years of practice, then committed perjury denying involvement three days after charges were filed.

44. Anne Trout, in her individual capacity as Special Education Director, who filed a false police report despite having zero email contact with Plaintiff, demonstrated fundamental ignorance of federal IDEA requirements, and coordinated with other school officials to fabricate allegations.

45. Marisol Pizarro, in her individual capacity as teacher, who falsely claimed Plaintiff's son kicked six children at 8:22 AM yet allowed him to remain in class all day—proving the fabricated nature of the allegation, gave mathematically impossible testimony under oath claiming cubbies were arranged in both "numerical order" and "alphabetical order" simultaneously, and coordinated with other staff to create false incident reports. (Expulsion Hearing Transcript, January 12, 2024, Pages 173-175, filed as Exhibit F, Docket #10, Case No. 2:25-cv-00465-TS). Notably, this same child now thrives at Daybreak Elementary School, located just half a mile from Early Light Academy, with zero behavioral incidents— proving the false nature of Early Light's allegations.

46. Sarah Hyatt, in her individual capacity as Behavioral Specialist, who filed a witness statement despite claiming she "wasn't aware," admitted taking photos of Plaintiff's son without consent knowing it would trigger behaviors, and participated in coordinated documentation to support expulsion.

## State Government Officials

47. Jordan Teuscher, in his individual and official capacity as Utah State Representative for South Jordan, who: a. Received and ignored Plaintiff's direct plea for help with housing discrimination in February 2023 (documented via email); b. Received and ignored Plaintiff's second plea for help in January 2024 when she informed him she was facing 2.5 years in jail for advocating for her son's education (documented via email); c. Co-sponsored retaliatory HB464 legislation in May 2024 after twice ignoring constituent in crisis who begged for help; d. Upon information and belief, coordinated with Cullimore Jr. and South Jordan officials regarding constituent matters affecting Plaintiff; e. Demonstrated deliberate indifference to civil rights violations in his district through pattern of ignoring pleas then retaliating with criminal legislation.

48. Kirk Cullimore Jr., in his individual and official capacity as Utah State Senator, who co-sponsored HB464 expanding criminal penalties for parental advocacy and collaborated with attorney Cara Tangaro through documented legislative coordination sessions to modify laws helping powerful families avoid consequences. According to the Deseret News/KSL investigation published August 13, 2025, Tangaro "collaborated with Sen. Cullimore and others to make a very small statutory adjustment" while representing Utah House Speaker Stuart Adams' granddaughter in a sexual assault case involving a 13-year-old victim. (Deseret News/KSL Investigation, August 13, 2025, attached hereto as Exhibit A). Additionally, Cullimore Jr.'s father Kirk Cullimore Sr. was simultaneously suing Plaintiff in housing court during the conspiracy period, creating additional family financial interest in silencing Plaintiff's discrimination complaints. The Cullimore family received $235,980 in state funds for "representing landlords" (Salt Lake Tribune Investigation, "Utah senator, a top lawyer for landlords, draws heavily from a state 'slush fund,'" July 19, 2020) while simultaneously criminalizing tenant advocacy through HB464, creating a direct financial incentive to silence discrimination complaints.

## Judicial Officer

49. Judge Michael Boehm, in his individual capacity, who presided over Plaintiff's criminal case, denied ADA accommodations by refusing to provide remote access link prompting Plaintiff to file a disqualification motion on May 6, 2025, then issued an illegal arrest warrant on May 15, 2025 while that disqualification motion was pending in violation of Utah law, issued a Rule 33 order that triggered South Jordan Justice Court to stop filing Plaintiff's motions, and acted outside his jurisdiction in conspiracy with other defendants to deny constitutional rights.

## Municipal Corporation

50. City of South Jordan is a municipal corporation that maintains official policies and customs of coordinating prosecutorial decisions with local educational institutions, whose police department systematically betrayed Plaintiff by first taking her complaint against Early Light Academy through Detective Palmer, then reversing course to prosecute her for identical conduct pursuant to official coordination protocols between city prosecutors, police, and Early Light Academy.

## Prosecutors

51. Deb Snow, in her individual capacity as prosecutor, who continued pursuing baseless charges against Plaintiff despite exculpatory evidence proving Plaintiff was the victim under Utah law, coordinated with school attorney Preston, and acted outside prosecutorial immunity through conspiracy to deny civil rights.

**Legal Network**

52. Cara Tangaro, in her individual capacity as attorney, whose law firm was documented by the Deseret News/KSL investigation (August 13, 2025) as collaborating with Senator Cullimore Jr. to draft legislation that would help powerful families avoid consequences while employing Plaintiff's defense attorney, creating an undisclosed conflict of interest, and operating the legal coordination hub of the enterprise through regular strategy meetings with Cullimore Jr. and other defendants.

53. Nicole Faas, in her individual capacity as attorney employed by Tangaro Law, who deliberately sabotaged Plaintiff's criminal defense by falsely claiming "motions to dismiss really isn't a thing" through specific communications detailed herein, refused to file exculpatory evidence, and conducted her sabotage through personal Gmail accounts (nicolefaas99@gmail.com) to avoid firm oversight and demonstrate consciousness of guilt.

**Court Staff**

54. COURT CLERK [NAME TBD], in individual capacity, employed by South Jordan Justice Court, who systematically refused to file Plaintiff's motions and evidence after Judge Boehm's Rule 33 order, creating complete obstruction of justice in coordination with other defendants.

55. WARRANT PROCESSING STAFF [NAMES TBD], in their individual capacity, employed by South Jordan Justice Court, who processed and issued arrest warrant #3044125 knowing or having reason to know that the $10,000 bail exceeded Utah's statutory limit of $680 by 1,470%.

**Law Enforcement Officers**

56. POLICE OFFICERS [NAMES TBD], in their individual capacity, employed by South Jordan Police Department, who executed arrest warrant #3044125 knowing or having reason to know that: a. Bail was set at 1,470% above the statutory limit; b. Warrant was issued by a disqualified judge; c. Warrant contained inflammatory language designed to escalate police encounters; d. Execution would constitute false arrest under color of law.

**Unknown Co-Conspirators**

57. Does 1-10 are unknown co-conspirators whose identities will be revealed through discovery, including but not limited to additional prosecutors who coordinated with school attorney Erin Preston through South Jordan's official prosecution coordination protocols to pursue harassment charges before any investigation was completed.

# XI. FACTUAL ALLEGATIONS

## Background: Advocating for Son's Rights

58. Plaintiff's son is a child with a disability entitled to special education services under IDEA, Section 504, and the ADA.

59. When Early Light Academy violated federal disability laws, Plaintiff advocated for her son's rights through professional emails requesting legally mandated services.

60. On January 6, 2023, the Utah State Board of Education issued Decision #SC-2223-08 officially determining that Plaintiff's advocacy emails were "necessary and legally required" under federal law. (Utah State Board Decision #SC-2223-08, January 6, 2023, filed as Exhibit P, Docket #10, Case No. 2:25-cv-00465-TS).

## The Criminal Conspiracy Begins

61. Instead of complying with federal disability laws, Early Light Academy officials coordinated with South Jordan Police through official city-school coordination protocols to criminalize Plaintiff's federally protected advocacy.

62. On September 19, 2023, Plaintiff sent a final email stating: "Please refrain from contacting me... The only thing I have ever asked is to leave my son and I alone." (Email from Plaintiff to Early Light Academy, September 19, 2023, filed as Exhibit H, Docket #10, Case No. 2:25-cv-00465-TS).

63. Under Utah law (Provo City v. Thompson, 2004 UT 14), when someone asks to be left alone and the other party continues contact, the person who asked to be left alone becomes the victim, not the harasser.

64. Early Light Academy ignored Plaintiff's request and continued sending emails, making them the harassers under Utah law.

65. Complete Silence After Expulsion: After November 29, 2023, there was absolutely no contact between Plaintiff and Early Light Academy, confirming that any alleged "harassment" had completely ended. This makes the December 19, 2023 escalation to police supervisors—20 days after achieving their goal through expulsion—inexplicable under any legitimate theory and proves malicious intent to destroy Plaintiff beyond any educational interest. No contact occurred after November 29, 2023, yet criminal charges were filed on January 9, 2024—exactly 40 days after the expulsion—based on the same emails the State Board had validated as "legally required."

## The South Jordan Police Department's Documented Betrayal - THE SMOKING GUN TIMELINE

66. October 28, 2023 - Plaintiff as Original Complainant: Plaintiff contacted Detective Palmer as the original complainant about Early Light Academy's false allegations, stating: "The school lied on my son to expel him and used AI to impersonate his voice... have two people who I have had zero contact with make witness statements against me."

67. November 9, 2023 - Palmer Assists Plaintiff: Detective Palmer connected Plaintiff with DCFS investigator, acting as her liaison and leading Plaintiff to believe the South Jordan Police Department supported her case. Palmer's November 9, 2023 email demonstrates his support: "Thanks for following up, I have been busy on other things and haven't had a chance to reach out, but yesterday I spoke with my Sgt about what had happened; we will get a notice from DCFS, we always do, I asked my Sgt to pull it and forward it to me and I will make sure it gets taken care of, meaning, I have already spoken to you about it and we won't do more than that. I will also reach out to DCFS and inform them you have been in contact with me and we have spoken about this issue, as this is a protracted issue that you have been dealing with and keeping law enforcement in the loop... Thank you for always being so thorough and easy to work with." (Email from Detective Todd Palmer to Plaintiff, November 9, 2023, 03:25 PM CST, attached hereto as Exhibit C). This email proves Palmer viewed Plaintiff as the victim needing assistance, not a perpetrator. Plaintiff notes that Detective Palmer attempted to help her and was overruled by the conspiracy; this email demonstrates the institutional betrayal when Palmer's supervisors reversed his protective stance. Upon information and belief, police records will show Detective Palmer investigated the school's allegations and took no enforcement action against Plaintiff.

68. November 29, 2023 - School Achieves Its Goal: Early Light Academy EXPELLED Plaintiff's child with a disability, achieving their objective and eliminating any alleged "threat" or "ongoing harassment."

69. December 7, 2023 - Plaintiff's Gratitude: Plaintiff told Detective Palmer: "What's really disappointing is I thought you guys were the only ones that believed in me. I told my therapist and everyone how grateful I was for the south Jordan police department."

70. December 19, 2023 - THE SMOKING GUN - School Escalates AFTER Victory: Detective Palmer informed Plaintiff: "The school's attorney and executive director contacted the police on me stating I harassed them." This occurred 20 days AFTER the child was already expelled. Twenty days after achieving their goal through expulsion, Early Light Academy escalated to police supervisors, proving pure malice beyond any legitimate educational interest. No legitimate institution continues pursuing

criminal charges after successfully removing a student. This timing destroys every justification for prosecution.

71. No Legitimate Interest After Expulsion: No legitimate educational institution continues pursuing criminal charges against a parent AFTER successfully expelling their child. The December 19, 2023 escalation—20 days post-expulsion—transforms this from arguably legitimate school safety concerns into proven malicious prosecution with no legitimate governmental interest.

72. January 9, 2024 - Same Department Prosecutes: The same South Jordan Police Department - with Sergeant Anderson leading the investigation - filed criminal charges against Plaintiff based on the identical allegations Palmer had initially received as complaints against the school. This was exactly 40 days after the November 29, 2023 expulsion.

73. The Smoking Gun Evidence of Malicious Prosecution: The December 19, 2023 escalation occurring 20 days after expulsion destroys every legitimate justification for prosecution: a. If safety was the concern: Expulsion on November 29 eliminated any threat; b. If harassment was the issue: No contact occurred after November 29, 2023, and expulsion ended all interaction; c. If protection was needed: The child was already removed from the school; d. The only explanation: Pure malice and intent to destroy Plaintiff beyond any legitimate school interest.

74. Proving Conspiracy Through Post-Victory Escalation: No legitimate institution escalates complaints AFTER achieving their stated objective. This timeline proves: a. The prosecution was never about safety, harassment, or protection; b. It was about systematic destruction of a Black mother who dared advocate for her child with a disability; c. The school's continued pursuit after "winning" demonstrates consciousness of guilt and malicious intent; d. The conspiracy's true purpose: total annihilation, not conflict resolution.

75. The Impossible Contradiction: No legitimate law enforcement agency has an officer write "Thank you for always being so thorough and easy to work with" to someone in November, promise to protect them from false allegations ("we won't do more than that"), acknowledge they're dealing with a "protracted issue," then prosecutes that same person in January for identical conduct. Detective Palmer's November 7, 2023 email proves he viewed Plaintiff as a victim needing protection. The department's reversal to prosecution 60 days later proves coordinated conspiracy, not law enforcement. Palmer tried to help, but the conspiracy went over his head. Notably, Detective Palmer is not named as a defendant because he attempted to protect Plaintiff; he was overruled by those with more power.

## Enhanced Enterprise Operations and Coordination - The "South Jordan Persecution Enterprise"

76. The Daybreak Geographic Nexus: All criminal conduct occurred within Daybreak, a community within South Jordan, creating an even tighter geographic concentration for the conspiracy. Early Light Academy is located in Daybreak, the alleged harassment occurred in Daybreak, and the South Jordan Police patrol Daybreak. This concentrated geography enabled the "South Jordan Persecution Enterprise" to operate through: a. Documented coordination: School-prosecutor consultation protocols established by City of South Jordan policy (to be proven through discovery); b. Proven coordination: Preston's admitted orchestration of criminal prosecution with prosecutors; c. Upon information and belief: Regular municipal and community meetings where school, police, and prosecutorial coordination occurred; d. Legislative coordination: Documented sessions between Cullimore Jr. and Tangaro Law per Deseret News/KSL investigation (August 13, 2025, Exhibit A); e. Demonstrated coordination: The October 2023 to January 2024 police reversal proving institutional coordination.

77. Interstate Commerce Effects: The enterprise affected interstate commerce through: a. Federal education funding to Early Light Academy (IDEA funds, federal grants); b. Federal constitutional rights violations requiring federal enforcement; c. Federal disability law violations under IDEA, Section 504, and ADA; d. Federal civil rights conspiracy transcending state boundaries and requiring federal jurisdiction.

## Legislative Retaliation

78. In February 2023, Plaintiff contacted Representative Jordan Teuscher, her South Jordan representative, pleading for help with housing discrimination. Teuscher ignored her plea. (Email to Rep. Teuscher, February 2023, filed as Exhibit P, Docket #10, Case No. 2:25-cv-00465-TS).

79. On January 23, 2024, after criminal charges were filed, Plaintiff again contacted multiple Utah legislators including Teuscher and Senator Cullimore Jr., stating: "I am facing 2.5 years in jail for advocating for my son's right to an education." Teuscher, who had already ignored Plaintiff's February 2023 plea for help with housing discrimination, once again failed to respond or assist. (Email to Utah Legislators, January 23, 2024, filed as Exhibit M, Docket #10, Case No. 2:25-cv-00465-TS).

80. Instead of helping after being contacted twice by a constituent in crisis, Teuscher and Cullimore Jr. co-sponsored HB464 in the same 2024 legislative session, expanding criminal penalties for parental advocacy after Plaintiff begged for assistance. The co-sponsorship is documented in official Utah Legislative records with both Teuscher and Cullimore Jr.'s names appearing as sponsors on HB464, providing irrefutable proof of their coordinated legislative action immediately following Plaintiff's plea for help. (HB464, 2024 Utah Legislative Session, filed as Exhibits K and L, Docket #10, Case No. 2:25-cv-00465-TS).

81. Simultaneously, news reports confirmed that Senator Cullimore Jr. was collaborating with attorney Cara Tangaro to modify laws to help Utah House Speaker Stuart Adams' granddaughter avoid consequences for sexual crimes against a 13-year-old. According to the Deseret News/KSL investigation published August 13, 2025, Tangaro "collaborated with Sen. Cullimore and others to make a very small statutory adjustment" while representing Adams' granddaughter. (Deseret News/KSL Investigation, August 13, 2025, attached hereto as Exhibit A).

82. This created a systematic double standard based on race and class: laws modified to help powerful white families while laws expanded to punish Black parents seeking constitutional rights for their children with disabilities.

83. The HB464 Criminalization of Parental Advocacy: HB464, passed in May 2024, now makes it a Class A misdemeanor (elevated from Class B) if a parent mentions another child's name during education proceedings. As Plaintiff noted: "Imagine a parent saying 'why was my kid suspended but not Sara?' Automatic class A misdemeanor." This expansion of the electronic harassment statute (Utah Code § 76-9-201) gives schools and prosecutors unprecedented discretion to selectively prosecute parents who advocate for their children. Every parent comparing their child's treatment to another student's now faces criminal liability. The timing—passed after Plaintiff begged for help while facing prosecution—demonstrates the retaliatory nature of this legislation designed to silence parental advocacy statewide.

## School Officials' Orchestration of Criminal Prosecution

84. In October 2023, school attorney Erin Preston coordinated with unknown prosecutors (Does 1-10) to pursue criminal charges, admitting to police this was the first parent prosecution in her "15+ years in education." (Police Interview Transcript, October 2023, Page 12 of 14, filed as Exhibit F, Docket #10, Case No. 2:25-cv-00465-TS).

85. Preston lied throughout the police transcript, falsely claiming there were threats when she simultaneously admitted "we don't have specific threats." (Police Interview Transcript, October 2023, Page 10 of 14, filed as Exhibit F, Docket #10, Case No. 2:25-cv-00465-TS).

86. On January 9, 2024, criminal charges were filed based on Preston's coordination with unknown prosecutors (Does 1-10)—exactly 40 days after the expulsion.

87. Three days later, on January 12, 2024, Preston committed perjury at the expulsion hearing, stating: "That timing was entirely coincidental. We had nothing to do with it," directly contradicting her October police interview where she admitted orchestrating the prosecution. This expulsion hearing occurred after charges were filed, demonstrating consciousness of guilt through perjury. (Expulsion Hearing Transcript, Page 14-15, January 12, 2024, filed as Exhibit F, Docket #10, Case No. 2:25-cv-00465-TS).

88. Principal Amy Bird secretly recorded Plaintiff's six-year-old child with a disability without parental consent, later admitting under oath she never informed Plaintiff about the recording. (Expulsion Hearing Transcript, Page 52, Lines 13-19, January 12, 2024, filed as Exhibit F, Docket #10, Case No. 2:25-cv-

00465-TS). The recording allegedly captured the child saying "I kicked him, punched him, and knocked him on the floor." Critically, Plaintiff's son consistently maintains this is NOT his voice on the recording, suggesting potential AI or voice manipulation. Video evidence from the classroom contradicts the alleged incident, showing no such violent contact occurred. (Expulsion Hearing Transcript, p. 47, January 12, 2024, filed as Exhibit F, Docket #10, Case No. 2:25-cv-00465-TS).

89. Teacher Marisol Pizarro falsely claimed Plaintiff's son kicked six children at 8:22 AM, yet the school allowed him to remain in class all day—proving the fabricated nature of the allegation. (Expulsion Hearing Transcript, January 12, 2024, filed as Exhibit F, Docket #10, Case No. 2:25-cv-00465-TS).

90. Pizarro also gave mathematically impossible testimony, claiming cubbies were arranged in both "numerical order" and "alphabetical order" simultaneously. (Expulsion Hearing Transcript, January 12, 2024, filed as Exhibit F, Docket #10, Case No. 2:25-cv-00465-TS).

91. Special Education Director Anne Trout filed a police report against Plaintiff despite having zero email contact with her, demonstrating the coordinated nature of false reports. (Police Report, October 23, 2023, filed as Exhibit G, Docket #10, Case No. 2:25-cv-00465-TS). Trout also demonstrated fundamental ignorance of federal IDEA law, incorrectly testifying that parent signature was required for IEP implementation. (Expulsion Hearing Transcript, January 12, 2024, filed as Exhibit F, Docket #10, Case No. 2:25-cv-00465-TS).

92. Behavioral Specialist Sarah Hyatt filed a witness statement while claiming she "wasn't aware" of issues, and admitted taking photos of Plaintiff's child with a disability without consent knowing it would trigger behavioral responses. (Expulsion Hearing Transcript, p. 204-206, January 12, 2024, filed as Exhibit F, Docket #10, Case No. 2:25-cv-00465-TS).

93. Despite school officials admitting they signed special education consent on June 1, 2023, they deliberately failed to provide any special education services, placing the child exclusively in general education, then expelled him without conducting the federally required Manifestation Determination Review (MDR) to determine whether the alleged behaviors were related to his disability—a clear violation of IDEA procedural safeguards. (Expulsion Hearing Transcript, p. 235-238, January 12, 2024, filed as Exhibit F, Docket #10, Case No. 2:25-cv-00465-TS).

## Attorney Sabotage and Consciousness of Guilt Through Gmail Usage - Rule 9(b) Specificity

94. In February 2024, Nicole Faas of Tangaro Law took Plaintiff's criminal case, creating an undisclosed conflict of interest because her firm's principal was actively collaborating with Senator Cullimore Jr. on legislation while both Teuscher and Cullimore Jr. were sponsoring laws to criminalize Plaintiff's advocacy. Plaintiff paid Faas for legal representation, unknowingly financing her own sabotage—a betrayal of the most fundamental attorney-client relationship where a client expects zealous advocacy, not deliberate destruction.

95. Consciousness of Guilt Through Gmail Usage: Faas conducted her attorney-client communications through personal Gmail (nicolefaas99@gmail.com) rather than official Tangaro Law firm email (@tangarolaw.com), demonstrating consciousness of wrongdoing by: a. Avoiding firm oversight - Personal email prevents Tangaro Law supervision of her conduct; b. Creating deniability - Firm can claim no official knowledge of her sabotage; c. Concealing evidence - Personal accounts suggest intent to hide misconduct; d. Following criminal pattern - Like criminals using "burner phones," she used Gmail as "burner email" to avoid detection. e. Professional Standard Violation: No legitimate attorney in criminal defense has EVER needed to use personal Gmail to avoid firm oversight. This is unprecedented evidence of deliberate sabotage.

96. Specific Wire Fraud Violations (Rule 9(b) Specificity):
   o **Wire Fraud Act 1:** On April 16, 2024, at 1:41 PM Mountain Time, Nicole Faas sent email from nicolefaas99@gmail.com to kranberry99@yahoo.com stating: "motions to dismiss really isn't a thing" in Justice Court, when she knew this was false because:
     ▪ Utah Rule of Criminal Procedure 12 expressly authorizes motions to dismiss;
     ▪ Justice Courts have jurisdiction to rule on constitutional motions;

- Faas had legal training and bar admission requiring knowledge of basic criminal procedure;
- The statement was made to prevent Plaintiff from filing case-ending motions;
- The communication crossed state lines via Gmail's interstate server network operating across multiple states including California, Texas, and Virginia.

- **Wire Fraud Act 2:** On March 8, 2024, at 4:15 PM Mountain Time, Faas sent email from nicolefaas99@gmail.com stating she would "handle the motion practice" while knowing she intended to file no motions, a material misrepresentation made:
    - To obtain Plaintiff's continued payment and trust;
    - While knowing she would sabotage the defense;
    - Via interstate electronic communication through Gmail's multi-state server infrastructure;
    - With intent to defraud Plaintiff of effective legal representation.

- **Wire Fraud Act 3:** On February 29, 2024, at 7:26 AM Mountain Time, Faas sent email dismissing Plaintiff's exculpatory evidence (September 19, 2023 email making Plaintiff the victim under Provo v. Thompson) as merely "helpful on a weight of the evidence at trial level," when she knew:
    - This evidence would end the prosecution immediately;
    - Utah law makes Plaintiff the victim, not the harasser;
    - Dismissing dispositive evidence constituted sabotage;
    - The misrepresentation was made via interstate electronic transmission.

- **Wire Fraud Act 4:** On April 18, 2024, at 1:01 PM Mountain Time, Faas sent email stating "Unconstitutionality is not a trial defense" and pushing for immediate trial rather than proper constitutional challenges, demonstrating her deliberate failure to investigate the South Jordan Police betrayal and her actual knowledge of the conspiracy, as no legitimate attorney would ignore such obvious evidence of malicious prosecution and police coordination.

97. No Innocent Explanation Under Desert Palace: Professional attorneys conducting legitimate representation use firm email accounts with firm domain names. Under Desert Palace's framework for evaluating circumstantial evidence, there exists no legitimate explanation for an attorney representing a criminal defendant to conduct official communications through personal Gmail while simultaneously: a. Falsely claiming fundamental criminal defense motions "don't exist"; b. Refusing to file case-ending exculpatory evidence; c. Working for a firm actively collaborating with legislators targeting her client; d. Pushing for immediate trial instead of proper constitutional motions.

98. Faas deliberately sabotaged Plaintiff's defense by: a. Falsely claiming "motions to dismiss really isn't a thing" in Justice Court (Email from Nicole Faas, April 16, 2024, 1:41 PM, attached hereto as Exhibit B), a statement so obviously false it could only be deliberate deception; b. Dismissing exculpatory evidence that would have ended the prosecution under Provo v. Thompson, specifically Plaintiff's September 19, 2023 email telling the school to stop contacting her; c. Pushing for immediate trial instead of filing proper constitutional and procedural motions; d. Failing to disclose the obvious conflict of interest with the Cullimore-Tangaro legislative collaboration; e. Using personal Gmail instead of firm email to avoid oversight, demonstrating consciousness of guilt and sophisticated criminal concealment.

99. When Plaintiff informed Faas that she had documented evidence proving she told the school to stop contacting her first (making her the victim under Utah law), Faas dismissed this case-ending evidence, demonstrating deliberate sabotage rather than incompetence.

## Systematic Evidence Suppression and Obstruction of Justice

100.    Pattern of Evidence Suppression: Defendants engaged in systematic suppression of exculpatory evidence that would have immediately ended the prosecution, demonstrating consciousness of guilt and sophisticated criminal coordination.

101.    Utah State Board Decision Suppression: a. Exculpatory Evidence: Utah State Board of Education Decision #SC-2223-08, issued January 6, 2023, officially determined Plaintiff's advocacy emails were "necessary and legally required" under federal law (filed as Exhibit P, Docket #10, Case No. 2:25-cv-

00465-TS); b. Systematic Suppression: This dispositive evidence was provided to prosecutors and courts multiple times but systematically suppressed from official proceedings; c. Consciousness of Guilt: Third District Court initially refused to file this evidence, then immediately began filing it after federal habeas petition documented the suppression pattern (Case No. 2:25-cv-00465-TS, Docket #15, filed June 20, 2025).

102. September 19, 2023 Email Suppression: a. Victim Status Evidence: Plaintiff's September 19, 2023 email stating "Please refrain from contacting me... The only thing I have ever asked is to leave my son and I alone" made Plaintiff the victim under Utah law (Provo City v. Thompson, 2004 UT 14); b. Faas Sabotage: Nicole Faas deliberately dismissed this case-ending evidence as merely "helpful on a weight of the evidence at trial level" (Email communications, filed as Exhibit B); c. Prosecutorial Suppression: Prosecutor Deb Snow continued prosecution despite being provided this exculpatory evidence proving Plaintiff was the victim.

103. School Board Findings Suppression: a. Exonerating Evidence: School Board's own findings stated "Ms. Blackwell loves T and is trying to get him a good education" (School Board Findings, January 22, 2024, filed as Exhibit F, Docket #10, Case No. 2:25-cv-00465-TS); b. Contradictory Prosecution: Defendants continued criminal prosecution despite their own findings that Plaintiff was a loving mother seeking education for her child with a disability.

104. Preston Perjury to Conceal Evidence - Sworn Confessions to Federal Crimes: a. October 2023 Sworn Confession to Federal Crimes: Preston admitted under oath in police interview to orchestrating "the first parent prosecution in 15+ years" and coordinating with prosecutors before any investigation was completed (Police Interview Transcript, October 2023, Page 12 of 14, filed as Exhibit F, Docket #10, Case No. 2:25-cv-00465-TS), constituting sworn confession to federal obstruction of justice under 18 U.S.C. § 1503 and conspiracy against rights under 18 U.S.C. § 241; b. January 2024 Sworn Confession to Federal Perjury: Three days after charges filed, Preston committed perjury under oath at expulsion hearing stating: "That timing was entirely coincidental. We had nothing to do with it" (Expulsion Hearing Transcript, Page 14-15, January 12, 2024, filed as Exhibit F, Docket #10, Case No. 2:25-cv-00465-TS), directly contradicting her October sworn admissions and constituting additional sworn confession to federal perjury under 18 U.S.C. § 1621 and witness tampering under 18 U.S.C. § 1512; c. Documented Federal Crimes Under Oath: These sworn statements, made under penalty of perjury in official proceedings, constitute documented confessions to federal crimes that are admissible as party admissions under Federal Rule of Evidence 801(d)(2), eliminating any requirement for additional proof of criminal intent or coordination; d. Evidence Concealment Purpose: Both sworn statements served to conceal the coordinated nature of the prosecution and Preston's central role in orchestrating the conspiracy, with the perjury specifically designed to obstruct federal proceedings and constitutional rights enforcement.

105. Federal and State Court Evidence Suppression Pattern: a. Systematic Refusal: South Jordan Justice Court systematically refused to officially file Plaintiff's motions and evidence after Judge Boehm issued a Rule 33 order, while Third District Court initially refused to file Utah State Board Decision #SC-2223-08 despite multiple submissions; b. Coordinated Obstruction: The refusal by South Jordan Justice Court to accept any filings after the Rule 33 order demonstrates complete obstruction of justice; c. Federal Documentation: June 20, 2025 federal habeas petition documented this systematic suppression pattern (Case No. 2:25-cv-00465-TS, Docket #15); d. Consciousness of Guilt Response: Immediately after federal documentation, Third District Court began filing the same evidence they had previously refused to file, demonstrating consciousness of guilt.

106. Obstruction of Justice Predicate Crimes: a. 18 U.S.C. § 1503: Systematic suppression of exculpatory evidence to obstruct judicial proceedings; b. 18 U.S.C. § 1512: Witness tampering through false testimony and evidence concealment; c. Interstate Nexus: Federal court proceedings and constitutional rights enforcement affected interstate commerce and federal jurisdiction.

107. The Rule 33 Coordination: Judge Boehm's issuance of a Rule 33 order immediately triggered South Jordan Justice Court to stop accepting Plaintiff's filings, demonstrating a. Judicial Retaliation: Court stopped accepting filings after Plaintiff challenged jurisdiction; b. Systematic Obstruction: Complete denial of access to justice; c. Consciousness of Guilt: Court has remained silent since warrant

was issued; d. Federal Violation: Denial of court access violates due process and right to petition for redress; e. Habeas Denial: On May 16, 2025, Plaintiff filed a habeas petition with South Jordan Justice Court challenging the illegal warrant, but the court refused to file it—one day after Judge Boehm issued the warrant (Attempted Habeas Filing, May 16, 2025, South Jordan Justice Court).

## Prosecutorial Misconduct

108.    Unknown prosecutors (Does 1-10) initially coordinated with school attorney Preston to pursue charges before any investigation was completed, violating prosecutorial ethics.

109.    Prosecutor Deb Snow took over the case and continued pursuing charges despite being provided with: a. The Utah State Board decision validating Plaintiff's emails as "necessary and legally required"; b. Plaintiff's September 19, 2023 email asking to be left alone (making her the victim under Provo v. Thompson); c. Evidence that charges were filed 40 days after all contact ceased; d. Proof of Preston's perjury about the school's involvement; e. School Board's own finding that "Ms. Blackwell loves T and is trying to get him a good education" (School Board Findings, January 22, 2024, filed as Exhibit F, Docket #10, Case No. 2:25-cv-00465-TS); f. 130+ Days of Silence: Snow has refused to respond to Plaintiff's Motion to Dismiss filed April 10, 2025—over 130 days of prosecutorial silence on a dispositive motion proving consciousness of guilt and inability to refute Plaintiff's legal arguments.

110.    Judge Michael Boehm enabled the persecution by: a. Denying ADA accommodation by refusing to provide remote access link on May 15, 2025, after granting remote access for multiple previous hearings; b. Issuing arrest warrant #3044125 on May 15, 2025 after Plaintiff filed a disqualification motion on May 6, 2025 in response to his denial of ADA accommodation, violating Utah law; c. Issuing Rule 33 order that triggered South Jordan Justice Court to stop filing Plaintiff's motions, coordinating obstruction across court systems; d. Threatening sanctions for filing basic motions; e. Refusing to rule on motions to dismiss for over 60 days (violates Utah R. Crim. P. 12(c)); f. Setting bail at $10,000 when Utah statutory maximum is $680—a 1,470% violation that no amount of judicial discretion can justify.

## Coordinated Multi-Institutional Attack

111.    The conspiracy coordinated a systematic attack across multiple institutions: a. Early Light Academy initiated false allegations and police reports; b. Erin Preston orchestrated criminal prosecution with unknown prosecutors (Does 1-10); c. Jordan Teuscher ignored direct pleas then sponsored retaliatory legislation; d. Kirk Cullimore Jr. collaborated with Tangaro through documented coordination to modify laws helping powerful families; e. Tangaro Law employed Plaintiff's defense attorney to ensure sabotage; f. Prosecutors Snow and unknown Does pursued baseless charges; g. Judge Boehm violated procedures to enable persecution; h. South Jordan Police systematically betrayed Plaintiff from support to prosecution.

## Enhanced Pattern Evidence of Conspiracy Under Desert Palace

112.    Gmail Evidence as Circumstantial Proof of Conspiracy: Under Desert Palace's recognition that circumstantial evidence can be "more certain, satisfying and persuasive than direct evidence," Faas's Gmail usage proves the conspiracy through: a. Consciousness of wrongdoing - No legitimate attorney uses personal email for criminal defense; b. Coordination with enterprise - Tangaro Law's documented collaboration with Cullimore required covert sabotage methods; c. Pattern of concealment - Gmail usage parallels other defendants' concealment efforts (Preston's perjury, false police reports); d. Sophisticated criminal operation - Using "burner email" demonstrates organized conspiracy, not individual incompetence.

113.    Temporal Correlation Proving Conspiracy: The following timeline, evaluated under Desert Palace's circumstantial evidence standard, proves conspiracy beyond reasonable doubt: • February 2023: Plaintiff contacts Teuscher for housing help - IGNORED • October 28, 2023: Plaintiff reports to

Detective Palmer as complainant • November 9, 2023: Palmer emails support: "Thank you for always being so thorough and easy to work with" • November 9, 2023: Palmer connects Plaintiff with DCFS, promises protection from false allegations • November 29, 2023: School EXPELS child - achieves their goal • December 7, 2023: Plaintiff expresses gratitude to Palmer and department • December 19, 2023: School escalates to supervisors 20 DAYS AFTER EXPULSION - THE SMOKING GUN • January 9, 2024: Same department files criminal charges (40 days after expulsion) - PALMER'S HELP OVERRULED • January 12, 2024: Preston commits perjury at expulsion hearing denying involvement • January 23, 2024: Plaintiff contacts legislators INCLUDING TEUSCHER AGAIN, begging for help • February 2024: Tangaro Law (via Faas) takes case using Gmail sabotage • March 2024: Faas refuses to file motions • April 2024: Faas claims motions "don't exist" • April 10, 2025: Motion to Dismiss filed - 130+ days of silence • May 2024: HB464 passes with Teuscher-Cullimore co-sponsorship - RETALIATION AFTER TWO IGNORED PLEAS • May 2025: Boehm denies ADA accommodation after multiple prior grants • May 6, 2025: Plaintiff files judicial disqualification motion in response • May 15, 2025: Boehm issues arrest warrant while disqualification pending • May 16, 2025: South Jordan Justice Court refuses to file Plaintiff's habeas petition • Post-Rule 33: South Jordan Justice Court stops accepting all of Plaintiff's filings and remains silent

114.    Geographic Concentration - The Daybreak Conspiracy Hub: All defendants operate within Daybreak and South Jordan's limited geographic area: • Teuscher: South Jordan representative whose district includes Daybreak • Early Light Academy: Located in Daybreak community • Preston: South Jordan school attorney serving Daybreak schools • Unknown prosecutors (Does 1-10): South Jordan jurisdiction covering Daybreak • South Jordan Police: Primary law enforcement for Daybreak • All criminal allegations: Occurred within Daybreak community This extreme geographic concentration within a single community makes coordination more likely than coincidental. Upon information and belief, Daybreak's insular nature creates opportunities for informal coordination that will be revealed through discovery.

115.    Consciousness of Guilt: Multiple defendants demonstrated awareness of wrongdoing through actions that, under the "deliberate indifference" standard, need only show knowledge of likely harm rather than malicious intent: a. Preston's perjury three days after charges filed; b. Faas's use of personal Gmail to avoid firm oversight; c. School officials filing reports despite no contact; d. Judge Boehm issuing warrant while disqualification motion was pending after denying ADA accommodation; e. South Jordan Justice Court stopping acceptance of filings after Rule 33 order and remaining silent; f. Third District Court immediately filing evidence after federal habeas exposed suppression; g. 130+ days of prosecutorial silence on motion to dismiss.

## Pattern of Racial and Disability-Based Discrimination

116.    The conspiracy specifically targeted Plaintiff, a Black parent advocating for her son's federal disability rights, demonstrating intersectional discrimination based on both race and disability status.

117.    Powerful white families (Adams' granddaughter) received sophisticated legislative help to avoid consequences through Cullimore-Tangaro collaboration, while Plaintiff, a Black mother, received legislative retaliation for seeking help.

118.    The systematic different treatment based on race and class—powerful white families versus Black parents advocating for disabled children—violates the Equal Protection Clause and federal civil rights laws. This racial discrimination is evidenced by: a. Plaintiff's documented complaints to the U.S. Department of Education alleging race discrimination by Early Light Academy; b. The failure of Utah educational oversight agencies to investigate documented misconduct against a Black child with disabilities; c. The pattern of institutional racism and ableism operating across systems to create comprehensive barriers to justice; d. The dehumanizing characterization of Plaintiff's child with disabilities, representing discriminatory stereotypes that influence institutional responses.

119.    This threatens every parent in America who advocates for their child's education, but particularly parents of color who face additional barriers in educational advocacy, as any parent could become the next target of this criminal enterprise.

**Impact of Criminal Persecution on Housing and Employment**

120.     Plaintiff has been unhoused since September 2024, living in temporary housing and unable to secure permanent housing due to the outstanding warrant that appears on all rental background checks. While multiple factors contributed to the initial housing loss, the warrant created by defendants' conspiracy now serves as an absolute bar to obtaining stable housing.

121.     The defendants' conspiracy in THIS case has created cascading harm preventing Plaintiff from maintaining stable employment and housing through:

**a. Outstanding Warrant #3044125:** The illegal warrant with 1,470% excessive bail appears on all background checks, automatically disqualifying Plaintiff from:

- o   Employment opportunities (employers reject candidates with pending criminal matters)
- o   Rental housing applications (landlords reject applicants with warrants)
- o   Professional licensing and certifications
- o   Educational opportunities requiring background checks
- o   Government benefits and services

**b. Employment Destruction:** The conspiracy's effects extended to Plaintiff's employment, where she was wrongfully terminated while on FMLA leave. The employer falsely claimed Plaintiff resigned, despite Plaintiff informing HR four times that she did not resign and it's documented via email. No person facing homelessness with an active warrant preventing new employment would voluntarily quit their job. This pattern of discrimination and mistreatment throughout Utah institutions demonstrates the pervasive nature of the conspiracy's harm.

**c. Criminal Record Stigma:** The harassment charges, though baseless and for constitutionally protected advocacy, create permanent reputational harm visible to all potential employers and landlords.

**d. Sabotaged Legal Defense:** Faas's deliberate sabotage prevented Plaintiff from clearing her name, ensuring the warrant and charges remain as permanent barriers to employment and housing.

122.     The defendants' conspiracy to criminalize Plaintiff's federally protected advocacy and systematically sabotage her defense has created the illegal warrant that now serves as a barrier to employment and housing. But for the warrant created through defendants' conspiracy, Plaintiff would be able to:
- o   Pass background checks required for employment
- o   Maintain stable employment without fear of termination
- o   Secure housing with employment income
- o   Clear her name through proper legal proceedings
- o   Escape the cycle of discrimination perpetuated by the outstanding warrant

123.     The conspiracy thus operates as a continuing violation, with the warrant serving as a permanent bar to basic necessities of life including employment and shelter, while the pattern of discrimination and mistreatment extends throughout Utah's institutions, effectively exiling Plaintiff from normal society. This systematic persecution demonstrates not isolated incidents but coordinated discrimination against a Black mother advocating for her child with a disability's federal rights.

# XII. STANDING AND INJURY-IN-FACT

124.     Concrete Ongoing Injury: Plaintiff has Article III standing based on concrete, ongoing constitutional injury that is neither speculative nor future harm: a. Active Constitutional Deprivation: The outstanding warrant #3044125 creates daily constitutional injury by preventing access to housing,

employment, and basic participation in society; b. Present Economic Harm: Documented inability to secure housing due to warrant appearing on background checks, creating quantifiable damages of temporary housing costs, lost employment opportunities, and damaged credit; c. Continuing Civil Rights Violations: The conspiracy operates as an ongoing enterprise with active warrant preventing exercise of fundamental rights; d. Traceability: Injuries directly caused by defendants' documented conspiracy to criminalize federally protected advocacy and systematically sabotage defense; e. Redressability: Federal court can enjoin warrant enforcement, order expungement, award treble damages under RICO, and mandate systemic reforms to prevent future violations.

# XIII. YOUNGER ABSTENTION DOES NOT APPLY

125.　　Younger v. Harris abstention is inappropriate because: a. Bad Faith Prosecution: State proceedings were initiated in bad faith as demonstrated by the South Jordan Police reversal (helping Plaintiff in October 2023, prosecuting in January 2024) b. No Adequate State Remedy: State law provides no adequate remedy when defense counsel conspires with prosecutors and legislators, and South Jordan Justice Court coordinates to block filing of motions and evidence. Under Sedima, 473 U.S. at 493, civil RICO was designed "in part to fill prosecutorial gaps" and serve as a "private attorney general" provision when state remedies fail. c. Extraordinary Circumstances: Documented conspiracy involving Plaintiff's own defense attorney and coordinated obstruction by South Jordan Justice Court presents extraordinary circumstances warranting federal intervention d. Important Federal Interests: Federal civil rights enforcement and protection of parental advocacy under IDEA require federal forum e. Pattern of State Court Obstruction: South Jordan Justice Court's refusal to file motions after Rule 33 order, refusal to file habeas petition on May 16, 2025, and complete silence since warrant issuance demonstrates complete absence of fair state proceedings f. ADA Violations: Judge Boehm's denial of remote access after granting it multiple prior times violates federal ADA requirements, requiring federal enforcement g. Federal Court's Unprecedented Treatment: Judge Stewart's denial without reasoning stands in stark contrast to his pattern of ALWAYS providing detailed findings and reasoning in pro se dismissals—research of his cases from 2006-2025 shows he provided reasoning in EVERY case except Plaintiff's, even after the Tenth Circuit remanded for further proceedings, demonstrating targeted discrimination h. Attorney Sabotage Creates Unprecedented Circumstances: The documented sabotage by Plaintiff's own defense attorney Nicole Faas, who used personal Gmail to avoid firm oversight while providing false legal advice, creates extraordinary circumstances never contemplated by Younger abstention. No state court proceeding can be considered adequate when the defense attorney is part of the conspiracy against the defendant.

# XIV. CAUSES OF ACTION

## COUNT I: RICO CONSPIRACY (18 U.S.C. § 1962(d))

126.　　Plaintiff realleges and incorporates by reference all preceding paragraphs.

127.　　Enterprise: Defendants operated the "South Jordan Persecution Enterprise," an association-in-fact of individuals and entities including legislators, prosecutors, judges, school officials, attorneys, and law enforcement officers who coordinated across institutional boundaries to systematically persecute parents advocating for children with disabilities' federal rights. Under Sedima, legitimate businesses and government entities "enjoy neither an inherent incapacity for criminal activity nor immunity from its consequences." 473 U.S. at 499. The enterprise operated through regular coordination mechanisms including: a. Official school-police coordination protocols established by South Jordan municipal policy b. Legislative coordination sessions between Cullimore Jr. and Tangaro Law (documented in Deseret News investigation, Exhibit A) c. Prosecutorial consultation procedures between Early Light Academy and South Jordan prosecutors d. Geographic concentration within Daybreak/South Jordan enabling

informal coordination through community networks e. Shared financial interests in silencing discrimination complaints (Cullimore family's landlord empire, school's federal funding, prosecutors' conviction rates)

128.     Pattern of Racketeering Activity: Defendants committed multiple predicate acts constituting a pattern under Sedima's "continuity plus relationship" test. 473 U.S. at 496 n.14. The acts span from February 2023 through August 2025, share common purposes (silencing disability advocacy), common methods (abuse of official power), common victims (Plaintiff and her child with a disability), and demonstrate ongoing continuity: a. Civil Rights Violations (18 U.S.C. §§ 241, 242): Coordinated multi-institutional conspiracy to deny federally protected disability advocacy rights, First Amendment rights, and due process rights; b. Wire Fraud (18 U.S.C. § 1343): Faas's specific false representations about legal procedures via interstate electronic communications, detailed with Rule 9(b) specificity in paragraphs 91-94. Under Sedima, "two fraudulent mailings or uses of the wires occurring within 10 years of each other might constitute a 'pattern of racketeering activity.'" 473 U.S. at 481-482; c. Mail Fraud (18 U.S.C. § 1341): If discovery reveals any fraudulent communications via USPS; d. Obstruction of Justice (18 U.S.C. § 1503): Judge Boehm issuing warrant while disqualified, blocking legal motions, Faas sabotaging defense, systematic evidence suppression; e. Witness Tampering (18 U.S.C. § 1512): Coordinated false reports and perjured testimony to obstruct federal proceedings and disability rights enforcement.

129.     Enhanced Sufficiency of Circumstantial Evidence: Under Desert Palace and reinforced by Sedima's broad reading of RICO, the following circumstantial evidence conclusively proves the RICO conspiracy beyond any reasonable innocent explanation. As Sedima recognized, RICO's "expansive language and overall approach" requires liberal construction, 473 U.S. at 497-498: a. The December 19, 2023 Smoking Gun: School escalating complaints 20 days AFTER achieving victory through expulsion proves malicious intent beyond any legitimate interest; b. Gmail "Burner Email" Evidence: Faas's use of personal email to avoid firm oversight while sabotaging defense demonstrates sophisticated criminal coordination; c. Legislative Retaliation Pattern: Two ignored pleas for help followed by criminalization legislation (HB464) creates irrefutable temporal correlation; d. Police Department Betrayal: October support to January prosecution of same conduct proves institutional coordination; e. Multi-Court Coordination: Simultaneous refusal to file motions across different court systems after Rule 33 order.

130.     Interstate Commerce: The enterprise affected interstate commerce through federal education funding, constitutional rights violations, and conspiracy transcending state boundaries.

131.     Damages: As a direct result of defendants' RICO conspiracy, Plaintiff suffered injury to her business and property including housing instability, employment barriers, professional reputation damage, and quantifiable economic losses exceeding $75,000. Under Sedima, these injuries are compensable without requiring proof of any separate "racketeering injury." 473 U.S. at 495.

## COUNT II: RICO SUBSTANTIVE VIOLATIONS (18 U.S.C. § 1962(a), (b), (c))

132.     Plaintiff realleges and incorporates by reference all preceding paragraphs.

133.     Section 1962(a): Defendants used income derived from racketeering activity (including state funds paid to Cullimore family for "representing landlords") to acquire and maintain interest in the South Jordan Persecution Enterprise.

134.     Section 1962(b): Defendants acquired and maintained control of the South Jordan Persecution Enterprise through racketeering activity, specifically the coordinated conspiracy to criminalize parental advocacy and protect powerful family interests.

135.     Section 1962(c): Defendants conducted the affairs of the South Jordan Persecution Enterprise through racketeering activity, operating the enterprise to systematically target parents advocating for children with disabilities while protecting powerful families through legislative coordination. Under Sedima, no prior criminal convictions are required to establish civil RICO liability. 473 U.S. at 493.

## COUNT III: CIVIL RIGHTS CONSPIRACY (42 U.S.C. § 1985(3))

136.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

137.    Class-Based Animus: Under Griffin v. Breckenridge, defendants conspired with animus against the class of Black parents advocating for children with disabilities' federal rights, demonstrating systematic different treatment compared to powerful white families receiving legislative protection.

138.    Conspiracy: Defendants conspired to deprive Plaintiff of equal protection and civil rights through coordinated actions across legislative, judicial, executive, and educational institutions.

139.    Overt Acts: Defendants committed overt acts in furtherance of the conspiracy including false arrests, perjured testimony, evidence suppression, and legislative retaliation.

140.    Injury: Plaintiff suffered constitutional injury, economic damages, and deprivation of federal rights as a direct result of defendants' conspiracy.

## COUNT IV: CIVIL RIGHTS VIOLATIONS (42 U.S.C. § 1983)

141.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

142.    Under Color of Law: All defendants acted under color of state law in their official capacities or in conspiracy with state actors. Under Dennis v. Sparks, private parties who conspire with state officials act under color of law. 449 U.S. at 28-29.

143.    Constitutional Violations: Defendants violated Plaintiff's rights under the First Amendment (parental advocacy), Fourteenth Amendment (due process and equal protection based on race and disability), Americans with Disabilities Act, and federal education laws.

144.    Causation: Defendants' actions were the proximate cause of Plaintiff's constitutional injuries and damages.

## COUNT V: MUNICIPAL LIABILITY UNDER MONELL (42 U.S.C. § 1983)

145.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

146.    Moving Force Causation: Under Monell v. Department of Social Services, 436 U.S. 658 (1978), municipal liability attaches when official policy or custom is the "moving force" behind constitutional violations. City of South Jordan's documented coordination protocols between police, prosecutors, and schools, combined with the systematic practice of betraying parents who seek police assistance, constitute both official policy and entrenched custom that directly caused Plaintiff's constitutional injuries.

147.    Official Policy Evidence: City of South Jordan maintains official policies that violated Plaintiff's constitutional rights, including: a. Written school-police coordination protocols establishing consultation procedures between Early Light Academy and South Jordan Police Department; b. Prosecutorial coordination policies requiring consultation with school attorneys before pursuing charges against parents; c. Official municipal coordination between legislative (HB464), prosecutorial (criminal charges), and law enforcement (warrant execution) functions to target parental advocacy; d. Systematic policies enabling the weaponization of criminal justice resources against parents advocating for disabled children's federal rights.

148.    Custom Evidence Under Monell Framework: As Monell established, "Congress included customs and usages [in § 1983] because of the persistent and widespread discriminatory practices of state officials... Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." 436 U.S. at 691. City of South Jordan has established customs that violate constitutional rights, including: a. Police Reversal Pattern: The systematic practice of betraying parents who seek police assistance, demonstrated by the October 2023 → January 2024 reversal where Detective Palmer initially supported Plaintiff then was overruled by supervisors who prosecuted her for identical conduct; b. Persistent Practice of Institutional Coordination: The entrenched custom of coordinating across municipal departments (police, prosecution, court administration) to target parents rather than protect them; c. Widespread Discriminatory Enforcement: The custom of selective enforcement protecting powerful families while

persecuting ordinary citizens, creating a two-tier justice system; d. Systematic Obstruction of Federal Rights: The established practice of blocking federal disability law enforcement through criminal retaliation against advocates.

149.    Monell Policymaker Liability: Final policymakers for City of South Jordan, including the Mayor, City Council, Police Chief, and Municipal Prosecutor, had actual or constructive knowledge of these constitutional violations and deliberately chose to maintain policies and customs causing such violations.

150.    Deliberate Indifference: City of South Jordan demonstrated deliberate indifference to constitutional violations by maintaining policies and customs that created an obvious risk of constitutional harm, particularly after being notified of federal rights violations through Plaintiff's advocacy and federal complaints.

151.    Municipal Damages: As a direct result of City of South Jordan's official policies and customs, Plaintiff suffered constitutional injuries including denial of due process, equal protection violations, and systematic obstruction of federal disability rights enforcement. City of South Jordan is liable for all damages caused by its policies and customs, including actions of individual defendants acting pursuant to municipal authority.

## COUNT VI: FEDERAL DISABILITY LAW VIOLATIONS

152.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

153.    IDEA Violations: Defendants violated the Individuals with Disabilities Education Act by criminalizing advocacy for special education services and retaliating against parents seeking federally mandated accommodations.

154.    ADA Violations: Defendants violated the Americans with Disabilities Act through systematic discrimination against a parent advocating for her child with a disability and denial of reasonable accommodations in judicial proceedings.

155.    Section 504 Violations: Defendants violated Section 504 of the Rehabilitation Act by discriminating against Plaintiff based on her son's disability status.

## COUNT VII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

156.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

157.    Extreme and Outrageous Conduct: Defendants' coordinated persecution of a Black mother advocating for her child with a disability, including sabotaging her legal defense and criminalizing federally protected advocacy, constitutes extreme and outrageous conduct exceeding all bounds of human decency.

158.    Intent/Recklessness: Defendants intended to cause emotional distress or recklessly disregarded the substantial likelihood their conduct would cause severe emotional distress.

159.    Severe Emotional Distress: Plaintiff suffered severe emotional distress as evidenced by housing instability, social isolation, professional reputation damage, and ongoing trauma from the systematic persecution.

160.    Causation: Defendants' conduct was the direct and proximate cause of Plaintiff's severe emotional distress.

# XV. SERVICE OF PROCESS

Due to Plaintiff's housing instability caused by defendants' conspiracy, Plaintiff requests the Court authorize electronic service and alternative service methods. Plaintiff requests that the United States Marshals Service serve defendants pursuant to Federal Rule of Civil Procedure 4(c)(3).

# XVI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

## A. RICO RELIEF:

1. Award treble damages under 18 U.S.C. § 1964(c) for all economic injuries including lost employment, housing costs, lost employment opportunities, professional reputation damage, and quantifiable losses exceeding $75,000;
2. Award reasonable attorney's fees and costs under 18 U.S.C. § 1964(c);
3. Issue permanent injunction dismantling the South Jordan Persecution Enterprise and prohibiting defendants from further coordinated retaliation against parents advocating for children with disabilities' rights;

## B. CIVIL RIGHTS RELIEF:

1. Award compensatory damages for constitutional violations including deprivation of First Amendment rights, due process violations, equal protection violations, and disability discrimination;
2. Award punitive damages against defendants in their individual capacities to deter future constitutional violations;
3. Issue declaratory judgment that defendants' actions violated federal civil rights laws under 42 U.S.C. §§ 1983, 1985;

## C. DISABILITY RIGHTS RELIEF:

1. Issue permanent injunction requiring compliance with IDEA, ADA, and Section 504 in all educational proceedings involving children with disabilities;
2. Order systematic reforms to prevent future discrimination against parents advocating for children with disabilities;
3. Award compensatory damages for disability rights violations;

## D. DISCOVERY AND CASE MANAGEMENT:

1. Appoint a Special Master pursuant to Federal Rule of Civil Procedure 53 to:
   - Oversee discovery in this complex RICO case
   - Review privilege claims and resolve discovery disputes
   - Manage document production from multiple defendants
   - Ensure preservation of electronic evidence including Gmail communications
   - Expedite discovery given ongoing constitutional violations
2. Order immediate preservation of all documents, emails, and electronic communications, including:
   - All Gmail accounts and personal email communications of defendants
   - Legislative drafting records and communications regarding HB464
   - South Jordan municipal coordination protocols between police, prosecutors, and schools
   - Early Light Academy federal funding records and compliance documents
   - Tangaro Law client intake and conflict check procedures
   - All communications between Cullimore family members and co-defendants
3. Order expedited discovery given active warrant and ongoing harm;
4. Grant Rule 27 depositions to preserve testimony before defendants coordinate stories;
5. Authorize appointment of expert witnesses in municipal liability, RICO conspiracy analysis, economic damages quantification, and federal civil rights enforcement to analyze the systematic violations and provide testimony regarding industry standards;

## E. PREVENT DEFENDANT COORDINATION AND ENSURE FAIR PROCEEDINGS:

1. **Require Separate Counsel:** Order separate legal representation for each defendant category (legislative, judicial, educational, prosecutorial, municipal) due to inherent conflicts of interest and demonstrated coordination capabilities that would enable continued conspiracy against Plaintiff's interests;
2. **Prohibit Joint Defense Agreements:** Prevent coordination of defense strategies between defendants who were co-conspirators, as such agreements would perpetuate the conspiracy and enable witness coordination contrary to justice;
3. **Bifurcated Discovery:** Establish separate discovery tracks for different defendant groups to prevent information sharing that could enable coordinated obstruction or perjury;
4. **Individual Depositions:** Order expedited individual depositions before defendants can coordinate testimony or align their stories about the conspiracy;
5. **Protective Orders Against Information Sharing:** Prevent defendants from sharing discovery materials, legal strategies, or witness information with each other, recognizing their status as co-conspirators rather than innocent parties;
6. **Conflict of Interest Resolution:** Identify and resolve all attorney conflicts that could enable coordination, including any attorneys representing multiple defendants or having relationships with the Tangaro Law network;
7. **Anti-Coordination Monitoring:** Appoint a Special Master to monitor for any coordination attempts between defendants and impose sanctions for violations;
8. **Separate Settlement Negotiations:** Require individual settlement discussions rather than group negotiations that could enable continued coordination against Plaintiff's interests;
9. **Comprehensive Conflict Screening:** Order comprehensive conflict screening for all defense counsel to identify Tangaro Law network connections, Cullimore family relationships, and any other conflicts that could enable continued coordination against Plaintiff's interests;

## F. INSTITUTIONAL REFORMS:

1. Order federal oversight of South Jordan Police Department coordination protocols with educational institutions;
2. Mandate training on federal disability laws and parental advocacy rights for all South Jordan municipal officials;
3. Establish independent monitoring of school-law enforcement coordination to prevent criminalization of federally protected advocacy;
4. Order reforms to prevent legislative retaliation against constituents seeking help with civil rights violations;
5. Appoint a Federal Monitor to oversee implementation of institutional reforms and ensure compliance with federal disability laws and civil rights protections for a period of not less than five years;

## G. ASSET PRESERVATION RELIEF:

1. Issue Preliminary Injunction freezing defendants' assets to preserve funds for potential judgment;
2. Order accounting of all assets and income streams of individual defendants;
3. Require bond or security to ensure payment of potential damages;
4. Prohibit transfer or concealment of assets pending resolution of this action;

## H. PERMANENT INJUNCTIVE RELIEF:

1. Issue permanent injunction enjoining defendants from further coordination against parents advocating for children with disabilities;

2. Order immediate expungement of all criminal charges and records related to Plaintiff's protected advocacy;
3. Issue declaratory judgment that arrest warrant #3044125 was product of conspiracy and violations of federal law;
4. Order South Jordan Justice Court to immediately file and adjudicate Plaintiff's pending motions and habeas petition;

## I. FEDERAL CRIMINAL PROSECUTION:

1. IMMEDIATE CRIMINAL REFERRAL to the Federal Bureau of Investigation and United States Attorney for the District of Utah for prosecution of the following federal crimes:
   - 18 U.S.C. § 241 (Conspiracy Against Rights): Defendants' multi-institutional conspiracy to deny constitutional rights
   - 18 U.S.C. § 242 (Deprivation of Rights Under Color of Law): State officials criminalizing federally protected advocacy
   - 18 U.S.C. § 1343 (Wire Fraud): Nicole Faas's documented fraudulent communications via Gmail
   - 18 U.S.C. § 1503 (Obstruction of Justice): Judge Boehm issuing warrant while disqualified; systematic evidence suppression
   - 18 U.S.C. § 1512 (Witness Tampering): Preston's perjury; coordinated false police reports
   - 18 U.S.C. § 1519 (Obstruction of Federal Proceedings): Suppression of exculpatory evidence in federal habeas proceedings
   - 18 U.S.C. § 371 (Conspiracy to Defraud United States): Conspiracy to violate federal IDEA funding requirements
   - 18 U.S.C. § 1001 (False Statements): Multiple false statements to federal court in habeas proceedings
2. Request immediate FBI seizure and preservation of all electronic evidence including:
   - Gmail accounts used for conspiracy communications
   - Legislative drafting files related to HB464
   - South Jordan municipal coordination protocols
   - Early Light Academy federal compliance records
   - Tangaro Law conflict check and client intake procedures
3. Request appointment of Special Counsel or Independent Federal Prosecutor given involvement of local U.S. Attorney's Office colleagues with state prosecutors;
4. Order preservation of evidence for criminal prosecution including all emails, recordings, and documents;
5. Certify question to U.S. Attorney General regarding pattern of civil rights violations requiring federal intervention;
6. Request FBI Civil Rights Division investigation into systematic persecution of parents advocating for disabled children;

## J. COMPENSATORY RELIEF:

1. Award actual damages for lost employment, lost future earnings, housing costs, and economic losses;
2. Award damages for mental health treatment costs necessitated by defendants' persecution;
3. Award hedonic damages for loss of life's pleasures due to systematic persecution;
4. Award pre-judgment and post-judgment interest on all monetary awards;
5. Order restitution for all fees paid to Nicole Faas for sabotaged legal representation;

## K. DETERRENT RELIEF:

1. Award punitive damages against each individual defendant in amount sufficient to deter future violations;

2. Issue contempt findings against defendants who violated federal law and court orders;
3. Order public disclosure of all conspiracy-related documents and communications;
4. Require public apology acknowledging violations of Plaintiff's civil rights;

## L. MONITORING AND COMPLIANCE:

1. Appoint federal monitor with subpoena power to investigate ongoing violations;
2. Establish citizen oversight board with parent advocates to review school-police coordination;
3. Require quarterly compliance reports to the Court for five years;
4. Create whistleblower protections for those reporting similar conspiracies;

## M. REPRESENTATION AND ACCESS TO JUSTICE:

1. Appoint Counsel for Plaintiff given:
   - Exceptional circumstances of attorney sabotage by Nicole Faas
   - Complex RICO litigation requiring legal expertise
   - Plaintiff's inability to secure representation due to defendants' interference
   - Interests of justice requiring level playing field against 20+ defendants with counsel
2. Alternatively, order pro bono representation through the Court's pro bono panel;
3. Advance litigation costs subject to reimbursement from defendants upon prevailing;
4. Waive all filing fees and procedural requirements that would deny access to justice;
5. Order defendants to pay interim attorney's fees under "catalyst theory" given clear violations;

## N. ADDITIONAL RELIEF:

1. Award costs and reasonable attorney's fees under 42 U.S.C. § 1988 and 18 U.S.C. § 1964(c);
2. Award enhanced attorney's fees given defendants' bad faith and exceptional circumstances;
3. Award litigation costs including expert witness fees, investigation costs, and court reporter fees;
4. Order mandamus relief compelling state courts to follow federal law;
5. Grant leave to amend as additional defendants and claims are discovered;
6. Grant such other relief as the Court deems just and proper.

## O. JURY TRIAL:

Plaintiff demands trial by jury on all claims so triable.

# XVII. INCORPORATION OF EVIDENCE

All exhibits, transcripts, and documents referenced herein are either: (1) currently on file in Case No. 2:25-cv-00465-TS (District of Utah) and its appeal, Case No. 25-4081 (Tenth Circuit), and are incorporated herein by reference; or (2) attached hereto as Exhibits A, B, and C.

**Attached Exhibits:** • Exhibit A: Deseret News/KSL Investigation (August 13, 2025) regarding Tangaro-Cullimore collaboration • Exhibit B: Nicole Faas emails demonstrating sabotage of defense • Exhibit C: Detective Todd Palmer email (November 9, 2023) proving South Jordan Police institutional betrayal

**Note:** Related proceedings are pending in the Tenth Circuit Court of Appeals, Case No. 25-4081, including Emergency Motion for Stay of Arrest Warrant documenting the conspiracy, filed August 18, 2025.

# XVIII. WORD COUNT CERTIFICATION

I, Antonia Blackwell, certify that this Complaint contains approximately 14,153 words and complies with all applicable word count requirements. The extraordinary length is necessitated by the complex multi-institutional RICO conspiracy spanning 20+ defendants across legislative, judicial, executive, and educational institutions, requiring detailed factual allegations to meet Rule 9(b) specificity requirements for fraud claims and to establish the sophisticated criminal enterprise documented herein.

# XIX. CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2025, upon this Court's grant of my Motion to Proceed In Forma Pauperis, I will request that the United States Marshals Service serve a true and correct copy of this Complaint on all defendants pursuant to Federal Rule of Civil Procedure 4(c)(3).

**Note:** This matter involves related proceedings currently pending in the United States Court of Appeals for the Tenth Circuit, Case No. 25-4081, including an Emergency Motion for Stay of Arrest Warrant Pending Appeal documenting the conspiracy evidence, filed August 18, 2025.

---

Respectfully submitted,

/s/ Antonia Blackwell
Antonia Blackwell, Pro Se
Plaintiff
385-334-6113
kranberry99@yahoo.com